**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Coe, | No. CV-24-03572-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Red Voice Media Incorporated, | |
| Defendant. | |

Before Court is Plaintiff Bryan Coe's Motion for Default Judgment (Doc. 12) against Defendant Red Voice Media Incorporated. For the following reasons, the Motion will be granted.

**I.     BACKGROUND**

On December 17, 2024, Plaintiff filed a Complaint against Defendant alleging that Defendant violated the Copyright Act, 17 U.S.C. § 501. (Doc. 1 at 1). Plaintiff is a professional videographer and created a video of a Halloween parade in New York, New York, which he first published on November 2, 2022. (*Id.* at 2–3). On December 10, 2022, the video was registered by the United States Copyright Office. (*Id.* at 3). Plaintiff created the video "with the intention of it being used commercially and for the purpose of display and/or public distribution." (*Id.*).

Defendant is a media company that owns and operates a website, from which it derives revenue from paid advertisements. (*Id.* at 1–3). On November 1, 2022, Defendant displayed Plaintiff's video on its website as a part of an online story about the parade. (*Id.*

at 4). Defendant did not have permission or authorization to copy or display the video. (*Id.*) Plaintiff alleges that the video uploaded and published by Defendant is an exact copy of his video. (Doc. 1 at 5). Plaintiff discovered the alleged infringement on December 5, 2022. (*Id.* at 4).

Plaintiff alleges that Defendant took an active role in selecting Plaintiff's video to display on its website, willfully posted the video, and received a financial benefit directly attributable to its infringement. (*Id.* at 5). Plaintiff further alleges that Defendant's use of the video has harmed Plaintiff's potential market for the video. (*Id.* at 6).

On March 17, 2023, Plaintiff's counsel contacted Defendant to address the alleged infringement and received no response. (*Id.*). On December 17, 2024, Plaintiff filed his Complaint. (Doc. 1). Plaintiff served Defendant on January 9, 2025. (Doc. 8). The Defendant failed to appear in this action, and Plaintiff filed an Application for Entry of Default on February 5, 2025. (Doc. 9). The Clerk filed the Entry of Default on February 6, 2025 (Doc. 10), and Plaintiff filed its present Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) on March 20, 2025. (Doc. 12).

**II.   DISCUSSION**

    **a.  Subject Matter Jurisdiction, Personal Jurisdiction, and Service**

When default judgment is sought against a non-appearing party, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."). A court has a similar duty with respect to service of process. *See Fishman v. AIG Ins. Co.*, No. CV 07-0589-PHX-RCB, 2007 WL 4248867, at *3 (D. Ariz. Nov. 30, 2007) ("Because defendant has not been properly served, the court lacks jurisdiction to consider plaintiff's motions for default judgment."). These considerations are "critical because '[w]ithout a proper basis for jurisdiction, or in the absence of proper service of process, the district court has *no power to render any judgment* against the defendant's person or property unless the

defendant has consented to jurisdiction or waived the lack of process.'" *Id.* (citing *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007)).

First, the Court may exercise subject matter jurisdiction because Plaintiff's Copyright Act claims invoke federal question jurisdiction. *See* 28 U.S.C. § 1331. Next, as to personal jurisdiction, this Court has personal jurisdiction over Defendant because Defendant is an Arizona corporation with its principal place of business in Maricopa County, Arizona, and was properly served. (Doc. 1 at 2); *see Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) (noting that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory"); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (noting that a federal court lacks personal jurisdiction over defendant unless defendant properly served). With respect to service, Defendant was properly served on January 9, 2025, by serving the summons on Defendant's statutory agent representative, who was designated by law to accept service of behalf of Defendant in accordance with Fed. R. Civ. P. 4(h)(1)(B). (Doc. 8). With preliminary considerations of jurisdiction and service of process out of the way, this Court turns to whether default judgment is appropriate.

### b. Default Judgment Analysis: *Eitel* Factors

A court has the discretion to enter a default judgment after a defendant's default. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In exercising this discretion, a court must consider the seven "*Eitel* factors": (1) the possibility of prejudice to the plaintiff; (2) the claim's merits; (3) the complaint's sufficiency; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits. *Id.* at 1471–72. In applying these factors, the Complaint's factual allegations, except those pertaining to the amount of damages, will be taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

#### i. First, Fifth, Sixth, and Seventh *Eitel* Factors

The first, fifth, sixth, and seventh factors weigh in favor of or are neutral about

default judgment in cases in which the defendants have not participated in the litigation at all. *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (D. Ariz. Mar. 26, 2020) ("In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh factors are easily addressed."). Regarding the first factor, which considers the possibility of prejudice to the plaintiff, Plaintiff here will be left without recourse and would therefore suffer prejudice in the absence of default judgment. *Id.* As to the fifth factor, which considers the possibility of a dispute regarding material facts, Defendant's failure to participate means there is no dispute of material fact. *Id.* at *4. The sixth factor considers whether the default was due to excusable neglect. *Id.* Here, Defendant's failure to participate after being properly served does not indicate that default was due to excusable neglect. *Id.* Lastly, the seventh factor—which considers the policy favoring decisions on the merits—would typically weigh against an entry of default judgment. *Id.* However, this consideration is not dispositive, as default judgments exist to deal with wholly unresponsive parties. *Id.* Here, a decision on the merits is impossible, given that Defendant failed to appear. In sum, the first, fifth, sixth, and seventh factors weigh in favor of default judgment.

### ii. Fourth *Eitel* Factor

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citation omitted). "[A] default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Id.* at 499. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020 WL 1495210, at *4 (internal quotations omitted) (citation omitted). Unlike the Complaint's other factual allegations, those pertaining to damages are not taken as true upon default. *Geddes*, 559 F.2d at 560. Thus, a plaintiff "is required to prove all damages sought in the complaint." *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at

\*6 (D. Ariz. Dec. 2, 2019) (internal quotations omitted) (quoting *Philip Morris USA, Inc*, 219 F.R.D. at 498). A plaintiff must "provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Fisher Printing Inc. v. CRG LTD II LLC*, No. CV-16-03692-PHX-DJH, 2018 WL 603299, at \*3 (D. Ariz. Jan. 22, 2018) (citing *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011)). Courts may rely on declarations submitted by the plaintiff in determining appropriate damages. *Tolano*, 2019 WL 6464748, at \*6 (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 498).

Here, Plaintiff seeks statutory damages under 17 U.S.C. § 504 in the amount of $5,000. (Doc. 12-7 at 16). Under § 504, a copyright owner may recover between $750.00 and $30,000.00. 17 U.S.C. § 504(c)(1). If a court determines that infringement way willful, it may increase a statutory damages award to no more than $150,000. 17 U.S.C. § 504(c)(2). Plaintiff submits that his typical licensing fee for use of the video would have been $1,000, and requests that fee be multiplied by five due to Defendant's willfulness. (Doc. 12-7 at 16.). As discussed below in the damages analysis, the sum Plaintiff seeks is expressly authorized by statute and, with a minor downward adjustment, is not unreasonable in light of Defendant's willfulness and continued infringement. Thus, the fourth factor weighs in favor of default judgment.

### iii. Second and Third Eitel Factors

The second and third *Eitel* factors consider the claim's merits and the complaint's sufficiency. *Eitel*, 782 F.2d at 1471. Courts frequently consider these to be the two most important factors. *Zekelman*, 2020 WL 1495210, at \*5 (citing *Viet. Reform Party v. Viet Tan - Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)). These factors are generally thought to require a plaintiff to state a claim on which he may recover. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

Plaintiff alleges Defendant is liable for direct copyright infringement, pursuant to 17 U.S.C. § 501, because it copied, reproduced, distributed, and publicly displayed Plaintiff's copyrighted video. (Doc. 1 at 6–7). A plaintiff asserting a claim for copyright

infringement must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, Inc., 499 U.S. 340, 361 (1991).

The allegations of the Complaint are sufficient to establish both elements. First, the Complaint alleges that Plaintiff owns the copyrighted video, which has been registered with the United States Copyright Office. (Doc. 12-6); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) ("A copyright registration is 'prima facie evidence of the validity of the copyright.'"). Second, Plaintiff has plausibly proposed evidence of direct copying, by showing screenshots of his video, Defendant's website featuring an identical frame from the video, and the video-hosting site featuring the same identical frame and demonstrating that Defendant uploaded the video. (Docs. 1-1, 1-2); *see also Burns v. Stonebrooke Mgmt. LLC*, CV-20-00139-PHX-JAT, 2020 WL 4530436, at *2 (D. Ariz. Aug. 6, 2020) (finding evidence in the form of screenshots of copyrighted works displayed on defendant's website sufficient to establish a plausible claim for recovery). Plaintiff also filed a declaration explaining how he "selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment to capture" the video. (Doc. 12-5 at 2); *see Feist*, 499 U.S. at 345 ("[T]he requisite level of creativity [required to constitute an original work] is extremely low; even a slight amount will suffice.").

Finally, the Complaint alleges that Defendant violated Plaintiff's exclusive rights under 17 U.S.C. § 106 by copying, reproducing, distributing, and publicly displaying the video on its website without authorization. (Doc. 1 at 6–7). In sum, the Court finds that Plaintiff has alleged facts that, taken as true, are sufficient to allege a copyright infringement claim.

### c. Relief Sought

#### i. Statutory Damages

Section 504(c) permits statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just," or up to as much as $150,000 where the infringement is "willful." 17 U.S.C. § 504(c)(1).

The Court finds that Plaintiff has sufficiently established that Defendant's infringement was willful. Defendant failed to appear in this action and failed to remove the infringing content after receiving notice that it was infringing. *See Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (explaining that willfulness occurs when the defendant (1) was actually aware of his infringing activity, or (2) showed reckless disregard for, or willful blindness to, the copyright holder's rights); *Adobe Sys., Inc. v. Tilley*, C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010) ("Willfulness can also be inferred from a defendant's failure to defend."); *Jitrade, Inc. v. Tae Hyun Kim*, LACV1607094JAKAJWX, 2017 WL 8186695, at *5 (C.D. Cal. July 11, 2017) ("Courts have inferred willfulness in part from a defendant's failure to comply with the judicial process."). As such, the appropriate statutory damages cap is $150,000.

Plaintiff requests statutory damages amounting to $5,000.00. (Doc. 12-7 at 19). Plaintiff asserts that his licensing fee is $1,000.00 and requests that fee, multiplied by a factor of five, is warranted in light of Defendant's willfulness and the statute's deterrence purposes. (*Id*. at 16, 19).

Courts within this district and the Ninth Circuit frequently award statutory damages totaling two to four times a copyrighted work's commercial licensing fee. *See generally Joe Hand Promotions Inc. v. Hernandez*, CV-19-04993-PHX-DJH, 2020 WL 13469590, at *3 (D. Ariz. May 13, 2020) (awarding statutory damages quadruple the licensing fee); *Michael Grecco Productions, Inc. v. TrekMovie.com*, 677 F. Supp. 3d 1104, 1110 (C.D. Cal. 2023) (awarding damages triple the licensing fee and noting that courts typically award two to three times the license fees). As such, the Court finds it appropriate to slightly reduce Plaintiff's requested statutory damages award to $4,000.00, four times the video's licensing fee. The Court finds that this amount is reasonable and appropriate, "and effectuates the purposes of an award of statutory damages under the Copyright Act—to discourage abuse and give effect to the Copyright Act." *Broad. Music, Inc. v. McDade & Sons, Inc*., 928 F. Supp. 2d 1120, 1135 (D. Ariz. 2013).

///

### ii. Attorneys' Fees and Costs

Plaintiff also requests attorneys' fees and costs pursuant to § 505 of the Copyright Act. 17 U.S.C. § 505; (Doc. 12-7 at 20). Plaintiff requests $5,235.00 in attorneys' fees and $490.40 in costs. (Doc. 12-7 at 8). Under § 505, a court may "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. While courts have discretion regarding whether to award attorneys' fees, they routinely award the reasonable fees incurred by a successful plaintiff. *See Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d at 1136. "When making such a determination, the Court may consider several non-exclusive factors, including 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Broad. Music Inc. v. Cowboys Up Inc.,* CV-19-00499-PHX-SMM CDB, 2019 WL 13472382, at *5 (D. Ariz. Oct. 21, 2019) (citation omitted).

Here, Plaintiff prevailed on his copyright infringement claim, which shows that the claim wasn't frivolous. *Fornix Holdings LLC v. Pepin*, CV-22-01275-PHX-DWL, 2023 WL 4488976, at *5 (D. Ariz. July 12, 2023). Additionally, Plaintiff "acted with appropriate motives—one of the Copyright Act's goals 'is to discourage infringement,' *Fogerty v Fantasy, Inc*., 510 U.S. 517, 526 (1994), and this suit does that." *Fornix Holdings LLC*, 2023 WL 4488976, at *5. As Defendant failed to assert any factual or legal arguments, no such arguments exist for the Court to assess their reasonableness. Lastly, considering compensation and deterrence, the Court finds that "the need to provide adequate compensation would not be met if the Plaintiff['s] request for attorneys' fees [was] denied and those fees exceeded (or even approached) the relatively small sum of statutory damages that Plaintiff[] ha[s] been awarded." *Id.* Moreover, from a deterrence perspective, if copyright holders such as Plaintiff lack adequate financial incentives to pursue similar cases, infringers will escape liability. *Id.* As such, the Court finds that the relevant factors weigh in favor of awarding attorneys' fees.

"The most useful starting point for determining the amount of a reasonable fee is

8

the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983). This calculation is known as the "lodestar method," which provides an objective basis on which to make an initial estimate of the value of an attorney's services. *Id.* The party requesting the fees must submit evidence supporting the reasonableness of the hours worked and the rates claimed. *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

In support of Plaintiff's request, Plaintiff submits a declaration from its counsel, Jacqueline Mandel (Doc. 12-1); attorney time and task records (Doc. 12-4); and invoices from its process server (Doc. 12-2). Mandel calculates her attorneys' fees based on an hourly rate of $500 per hour for 6.9 hours of work and calculates the fees of her co-counsel, Craig B. Sanders, based on an hourly rate of $750 per hour for 1.9 hours of work. (Doc. 12-7 at 24). Mandel is an associate attorney with 8 years of experience, and Sanders is a partner with 30 years of practice experience. (*Id.* at 22–23). Mandel's declaration avers that both she and Sanders have extensive experience litigating intellectual property cases. (Doc. 12-1 at 4). Additionally, counsel seeks to recover for 2.9 hours of work completed by four paralegals based on an hourly rate of $150 per hour. (Doc. 12-7 at 24).

With respect to the reasonableness of counsel's rates, Plaintiff's brief argues that "[j]udges in this and other *Washington* districts have concluded that rates in the same range as those charged by Plaintiff's lawyers were reasonable for experienced counsel handling complex litigation[,]" before citing various cases from the United States District Court for the Central District of California. (Doc. 12-7 at 22 (emphasis added)). This Court is within the District of Arizona, not the Central District of California nor any Washington district. As such, the prevailing market rates within Arizona are the proper standard. *See Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1087 (9th Cir. 2015) ("In civil litigation, we typically recognize the forum where the district court sits as the 'relevant community' for purposes of fee-shifting statutes.").

In Arizona, courts have found a variety of rates reasonable for partners and senior

9

associates with specialized experience in intellectual property litigation. *See Reilly v. Wozniak*, CV-18-03775-PHX-MTL, 2023 WL 1864418, at *1 (D. Ariz. Feb. 9, 2023) (finding partner rates of $300-325 an hour and associate rates of $225-$300 an hour reasonable for intellectual property litigation attorneys in Arizona); *OSN Labs, LLC v. Phoenix Energy, LLC*, CV-23-01188-PHX-MTL, 2024 WL 2832437, at *3 (D. Ariz. June 4, 2024) (finding hourly rates of $410 per hour for an attorney with 35 years of experience, $745 an hour for an attorney with 15 years of experience, and $495 an hour for an attorney with 9 years of experience reasonable where attorneys had specialized intellectual property experience); *Kaufman v. Warner Bros. Entm't Inc.*, CV-16-02248-PHX-JAT, 2019 WL 2084460, at *12 (D. Ariz. May 13, 2019) (finding hourly rate of $690, which was later discounted to $552, reasonable for partner with nearly 40 years of experience with intellectual property litigation); *BoxNic Anstalt v. Gallerie degli Uffizi*, No. CV-18-1263-PHX-DGC, 2020 WL 2991561, at *2 (D. Ariz. June 4, 2020) (concluding that hourly rates of $695 to $725 for an experienced partner practicing in intellectual property and of $520 to $575 for a senior associate were reasonable, and further concluding that hourly rates of $250 for associate attorneys and of $150 for paralegals were reasonable in the Phoenix, Arizona legal market). While the attorneys' requested hourly rates fall on the higher end of prevailing market rates for attorneys of comparable skill, experience, and reputation, the Court does not find that the requested fees are unreasonable given the respective attorneys' specialization and experience. The Court also finds the requested rate for work completed by paralegals to be reasonable. *Kaufman*, 2019 WL 2084460, at *12–13 (finding hourly rates ranging from $105–$240 per hour reasonable for paralegals).

Moreover, the Court finds that counsel's recorded number of hours worked generally seems reasonable and sufficiently detailed. However, the records in part seek to recover for clerical tasks, such as filing documents, preparing requests for summons, and coordinating service process. (Doc. 12-4 at 2). Attorneys' fees are typically not awarded for clerical tasks, "because such work should be subsumed in a law firm's overhead." *ME SPE Franchising LLC v. NCW Holdings LLC*, No. CV-21-00458-PHX-DJH, 2023 WL

2691562, at *11 (D. Ariz. Mar. 29, 2023) (citations omitted); *see also Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847 (9th Cir. 2012) ("We find that the district court did not abuse its discretion in declining to award Neil attorney's fees for purely clerical tasks such as filing documents and preparing and serving summons."). The Court will thus not award fees for the time entries dated December 18, 2024, and January 7, 2025, as they comprise of solely clerical tasks, and will subtract $270.00 from the total fees award. In sum, the Court will award Plaintiff $4,965.00 is attorneys' fees.

Lastly, the Court finds that Plaintiff, having prevailed in this action, is entitled to his requested $490.40 costs related to the Court's filing fee and execution of service of process. *See* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.").

### III. CONCLUSION

Having reviewed Plaintiff's Motion and supporting documents, and having considered the *Eitel* factors as a whole, the Court concludes that the entry of default judgment is appropriate for Plaintiff's copyright infringement claim under 17 U.S.C. § 501 against Defendant Red Voice Media Incorporated.

///
///
///
///

Accordingly,

**IT IS ORDERED:**

1. That Plaintiff Bryan Coe's Motion for Default Judgment (Doc. 12) is **granted.**
2. That Plaintiff shall be awarded **$4,000 in statutory damages.**
3. That Plaintiff shall be awarded **$4,965 in reasonable attorneys' fees** and **$490.40 in costs** pursuant to 17 U.S.C. § 505.
4. That the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 26th day of March, 2025.

Honorable Steven P. Logan
United States District Judge